UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID G. MORTON,

        Plaintiff,

v.

BANK OF AMERICA, N.A., et al.,

        Defendants.

Case No. 1:12-cv-511

Honorable Robert Holmes Bell

**REPORT AND RECOMMENDATION**

        This is a civil action brought by a mortgagor against the mortgagee bank and others involved in a real estate loan transaction involving real property in Kent County, Michigan. Plaintiff initiated this case in the Kent County Circuit Court. The case was subsequently removed to this court on the basis of both federal-question and diversity jurisdiction. Plaintiff's *pro se* complaint names Bank of America, N.A., Mortgage Electronic Registration Systems, Inc. (MERS), the law firm of Trott & Trott, and individuals employed by both the Bank and the law firm. By previous orders or judgments, all defendants have been dismissed from this case except for Bank of America, MERS, and Youda Crain, an employee of the Bank.

        Plaintiff's *pro se* complaint is captioned a "Complaint to Quiet Title." Plaintiff's principal contention is that the mortgage that he and his wife executed in 2003, encumbering their residence in Kent County, Michigan, should be canceled. Plaintiff asserts that none of the defendants has standing to foreclose on the mortgage. He also alleges that defendants are liable for violations of the Truth In Lending Act (TILA) and the Real Estate Settlement Procedures Act

(RESPA). Defendants Bank of America, MERS, and Crain have moved for judgment on the pleadings, but supported their motion with documents beyond the pleadings. Therefore, this court elected to treat the motion as one for summary judgment under Rule 56 and so notified the parties. (Order, docket # 49). Plaintiff opposes the motion. For the reasons set forth below, I conclude that the moving defendants are entitled to judgment on all plaintiff's claims as a matter of law.

**Proposed Findings of Fact**

This action was commenced in the Kent County Circuit Court on April 27, 2012, with the filing of a complaint captioned "Complaint to Quiet Title, With Statutory Money Damages for Violation of TILA, RESPA, and Other Applicable State and Federal Home Lending Laws." (Compl., docket # 1-1). The complaint seeks to quiet title to real property located in the City of Kentwood in Kent County, Michigan. Plaintiff claims fee simple title resulting from a warranty deed to him and his now-deceased wife, recorded on January 25, 2002. (Compl., ¶ 17). Plaintiff alleges that on March 15, 2003, he refinanced the original home loan with Countrywide Home Loans, Inc. (which has since been acquired by defendant Bank of America). The refinanced loan was embodied in a promissory note (ID#s 315-16) and was secured by a mortgage recorded on March 25, 2003. (ID#s 318-31). The mortgage was written on the standard FHA form. It was in favor of MERS, as nominee for the lender and its successors and assigns. (ID# 318). The mortgage instrument expressly provided that the mortgage and note could be sold or transferred without the borrowers' consent. (¶ 20, ID# 326). The mortgage also contained a power of sale, allowing sale of the property upon default in accordance with "Applicable Law." (¶ 22, ID# 327).

Six years later, plaintiff began to question "who was the real creditor and who had the right to collect payments." (Compl., ¶ 21). He alleges that he served defendants Bank of America and MERS with a "qualified written request" pursuant to RESPA demanding specific verification and validation of their positions and claims. (*Id.*, ¶ 21; ID#s 335-40). On December 8, 2009, an employee of Bank of America responded to plaintiff's letter. (ID# 346). On February 5, 2010, counsel for Bank of America sent plaintiff a detailed response (ID#s 347-49), enclosing copies of the original promissory note and other closing documents, a payment history, and a statement verifying the amount of the debt. Plaintiff admittedly began withholding his mortgage payments in late 2009. (Compl., ¶ 23).

On December 14, 2009, plaintiff served a "notice to cancel loan" on the Bank and MERS. The notice purported to exercise a right under the Federal Truth in Lending Act to cancel the financing transaction. (Compl., Ex. 3, docket # 1-1, ID#s 32-35). At the same time, plaintiff served a "notice of removal of trustee" (Compl., Ex. 4, docket # 1-1, ID#s 42-44) which purported to remove Bank of America and MERS as trustees or nominees of the mortgage. On February 10, 2010, plaintiff signed an addendum to his notice to cancel loan. (Compl., Ex. 3, docket # 1-1, ID#s 36-39). Plaintiff filed these documents with the Kent County Register of Deeds. Plaintiff contends that these documents abrogated the mortgage and relieved him of any further responsibility to make payments.

On June 13, 2011, MERS assigned the mortgage to Bank of America. (ID# 333). Bank of America, acting through its attorneys defendant Trott & Trott, began a foreclosure by advertisement under Michigan law in July 2011. (Compl., ¶ 29). It does not appear that the foreclosure has yet resulted in a sale.

The complaint asserts a claim for "lack of standing/estoppel by acquiescence" (Compl., ¶¶ 32-34) asserting that defendants' failure to rebut the statements made in plaintiff's various filings with the Register of Deeds estops defendants from contradicting them. Plaintiff broadly alleges violations of TILA and RESPA (¶¶ 16, 21, 22) but provides few supporting facts. The next claim is "lack of standing/fatally defective assignment." (Compl., ¶¶ 35-38). In this count, plaintiff asserts that MERS lacked contractual authority to assign the mortgage to any other party. (*Id.* at ¶ 37). Defendant Crain, who signed the assignment document as "Assistant Secretary of MERS," is alleged to have been a "robo signer." (*Id.*). Further, plaintiff alleges that as a nominee, MERS had nothing to assign. (*Id.*). On this basis, plaintiff alleges that Bank of America has no interest in the mortgage and that the Trott & Trott law firm had no authority to begin foreclosure by advertisement proceedings. (*Id.* at ¶ 38).

Plaintiff's third claim is denominated "lack of standing/no right or cause of action." (Compl., ¶¶ 39-43). This claim also relies on defendants' failure to rebut the statements made by plaintiff in the notices that he served on them and filed with the Register of Deeds. The claim also relies on plaintiff's unilateral acts in purporting to cancel the mortgage, remove the trustees, and revoke any power of attorney that might have been created by the mortgage documents.

## **Discussion**

Plaintiff's complaint identifies two federal claims, in addition to claims arising under Michigan law. The complaint mentions the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601-1667f. Plaintiff also purports to assert a claim under the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601-2617. Neither the TILA claim nor the RESPA claim has any merit. Plaintiff also

asserts three purported state-law claims, which are both redundant and meritless. I therefore recommend the entry of a summary judgment for the moving defendants[1] on all claims.

## A. TILA

Congress passed the Truth in Lending Act in 1968 to promote the informed use of credit, by assuring meaningful disclosure of credit terms to consumers. *See Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559 (1980). Regulation Z, 12 C.F.R. § 226.1, *et seq.*, was promulgated by the Federal Reserve Board to implement TILA and, in general, prescribes the form in which a creditor must disclose certain items required by the Act. TILA liability arises when a creditor fails to make required disclosures "before the consummation of the transaction" (Reg. Z, § 226.17(b)), defined as the time that a consumer becomes contractually obligated. (*Id.* at § 226.2(a)(13)).

Plaintiff's complaint states no conceivable claim under TILA. Plaintiff merely mentions TILA in the caption of his complaint and again in paragraphs 16 and 22. Beyond that, he alleges no facts that would give rise to a plausible claim for improper or inadequate disclosures at the time plaintiff consummated the mortgage transaction in 2003. Even if a claim of inadequate disclosure had been alleged, it would be subject to the one-year statute of limitations created by 15 U.S.C. § 1640(e). TILA liability arises when a creditor fails to make the required disclosures before consummation of a transaction. *See United States v. Petroff-Kline*, 557 F.3d 286, 296 (6th Cir. 2009). Consummation occurs when the borrower signs the loan documents and becomes obligated

---

[1] Plaintiff has named Youda Crain as a defendant. Her name appears only three times in the body of the complaint. Plaintiff alleges that Crain is a closing specialist for Bank of America (Compl., ¶ 12), that she signed an assignment of mortgage on behalf of MERS (¶ 37(b)), and that she is also employed by the Bank (¶ 37(c)). These allegations state no conceivable claim under either federal or state law. The allegations against Crain are so patently deficient that they merit no further discussion.

to pay. *Id.* Under these principles, plaintiff's claim for damages arose in the year 2003, when he and his deceased wife signed a promissory note and mortgage. The limitations period therefore expired almost a decade ago.

In addition to seeking damages under TILA, plaintiff also apparently seeks to invoke its recision privileges. This right must be exercised within three business days of the consummation of the transaction, but this period is extended to three years in certain unusual circumstances. 15 U.S.C. § 1635(a), (f). Assuming a three-year recision period, that period closed on March 15, 2006, three years after consummation of the mortgage transaction. Plaintiff purported to rescind under TILA in his letter of December 14, 2009, three years after the recision period closed. Thus, any conceivable TILA claim is time-barred. *See Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 417 (1998); *Lumpkin v. Deutsche Bank Nat'l Trust Co.*, No. 12-2317, 2013 WL 4007760, at * 2-3 (6th Cir. Aug. 6, 2013).

Plaintiff states no facts in support of a TILA claim, and any such claim would be time-barred in any event. This claim should therefore be dismissed.

**B.     RESPA**

The Real Estate Settlement Procedures Act, or RESPA, was enacted to provide "more effective advance disclosure to home buyers and sellers of settlement costs" in response to "abusive practices" in the real estate settlement process. 12 U.S.C. §§ 2601(a), (b)(1). RESPA creates a cause of action in favor of a borrower for actual damages arising from violation of any of the requirements of the Act. 12 U.S.C. § 2605(f)(1). Plaintiff alleges that he served on the defendant Bank and MERS a "qualified written request," or QWR, within the meaning of RESPA. *See* 12 U.S.C. §

2605(e)(1)(B). RESPA requires servicers of federally related mortgage loans to respond in certain ways, and within certain limited time periods, to QWRs. *Id.* at § 2605(e)(2).

The Sixth Circuit has made it clear that liability for RESPA for failure to respond to QWRs attaches only to loan servicers. *See Joyner v. MERS*, 451 F. App'x 505, 507 (6th Cir. 2011). MERS is not alleged to be a loan servicer. The record clearly shows that it is merely a nominee for lenders. *See Golliday v. Chase Home Fin., LLC*, No. 1-10-cv-532, 2011 WL 4352554, at * 7 (W.D. Mich. Aug. 23, 2011) (explaining role of MERS in mortgage transactions). Bank of America was also not a loan servicer, but is the mortgagee. "[T]he relevant provisions of RESPA apply only to mortgage servicers, not loan holders." *Joyner*, 451 F. App'x at 507; *accord Jones v. ABN Amro Mortg. Grp., Inc.*, 606 F.3d 119, 124 (3d Cir. 2010). In the absence of an allegation that any defendant was acting as a loan servicer, the complaint fails to state a claim under RESPA.

Even assuming that Bank of America was acting as a loan servicer, plaintiff has failed to establish a triable issue of fact in support of his RESPA claim against the Bank. Under RESPA, a loan servicer has the duty to respond to a borrower's inquiry or qualified written request. 12 U.S.C. § 2605(e). A qualified written request (QWR) must include a statement describing why the borrower believes that the account is in error or must provide sufficient detail to the servicer regarding other information sought by the borrower. 12 U.S.C. § 2605(e)(1)(B). At the time relevant to the complaint, the loan servicer was required to acknowledge within twenty days and to respond within sixty days (excluding legal public holidays, Saturdays and Sundays) from receipt of the QWR. 12 U.S.C. § 2605(e)(2).[2] The courts are unanimous in holding that a QWR must relate

---

[2] The Dodd-Frank Act amended RESPA, shortening the time for loan servicers to respond from sixty to thirty days. Although there is some uncertainty whether this change went into effect in 2013 or will go into effect in 2014 through implementing regulations, *see Farson v. Carrington*

to the servicing of a loan and not its validity. *See, e.g., Drew v. Kemp-Brooks, Inc.*, 802 F. Supp. 2d 889, 897-98 (E.D. Mich. 2011); *Keen v. American Home Mortg. Serv., Inc.*, 664 F. Supp. 2d 1086, 1097 (E.D. Cal. 2009); *MorEquity, Inc. v. Naeem*, 118 F. Supp. 2d 885, 901 (N.D. Ill. 2000) (correspondence from mortgagor did not qualify as QWR, because it alleged a forged deed but made no claim with respect to improper servicing). These courts rely on the statutory definition of "servicing" as (1) receiving scheduled periodic payments from a borrower or (2) making payments with respect to amounts received from the borrower. 12 U.S.C. § 2605(i)(3).

In the present case, the purported QWR is a letter dated November 2, 2009, addressed to Bank of America and MERS. (Compl., Ex. D, ID#s 335-40). Plaintiff's lengthy correspondence challenged the validity of the mortgage and asked for copious information. It is doubtful that plaintiff's correspondence qualifies as a QWR under RESPA. Assuming that it does, however, Bank of America acknowledged receipt within the twenty days allowed by the statute (as it existed in 2009) (ID# 346) and by February 5, 2010, counsel for the Bank had provided plaintiff with copies of all of the underlying loan documents and with a copy of the payment history. (ID#s 347-49). Although plaintiff's complaint alleges that defendants ignored his QWR, defendants' well-supported summary judgment motion required more than a bare allegation of noncompliance. Rather, plaintiff was required to produce sufficient evidence to create a triable issue of fact. The responses now on record show that Bank of America provided more than adequate information concerning any "servicing" issue raised by plaintiff.

---

*Mortg. Servs., LLC*, No. 8:13-cv-2289, 2013 WL 5705565, * 4 (M.D. Fla. Oct. 18, 2013), without question the effective date of the change is a date years after plaintiff's correspondence.

All defendants are entitled to a summary judgment on plaintiff's inadequately pleaded and factually unsupported claim under RESPA.

### C. State-Law Claims

Plaintiff seeks a judgment voiding the real estate mortgage that secured a $200,000 promissory note executed by plaintiff and his wife in connection with a refinancing transaction. Plaintiff paid on the note for a period of six years, but in 2009, ceased payments, on the contention that the mortgage was somehow fraudulent. The mortgage that plaintiff seeks to avoid was written in favor of defendant MERS, acting solely as a nominee for "Lender and Lender's successors and assigns." The mortgage instrument clearly provided that it could be sold "one or more times without prior notice to Borrower." (¶ 20, ID# 326). The mortgage contained a power of sale and provided that the mortgagee could invoke the power of sale pursuant to any applicable law. (¶ 22, ID# 327).

Under Michigan law, a power of sale contained in a mortgage instrument is "an incident of the private right to contract." *Cramer v. Metro. Sav. & Loan Ass'n*, 258 N.W.2d 20, 23 (Mich. 1977) (citing *Equitable Trust Co. v. Barlum Realty Co.*, 292 N.W. 691 (Mich. 1940) and *Northrip v. Federal Nat'l Mortg. Ass'n*, 527 F.3d 23, 26-27 (6th Cir. 1975)). Consequently, a mortgagee exercising the right to foreclose under a power of sale is relying on a contract remedy, and not on a right created by statute. *Cramer*, 258 N.W.2d at 23. Although this remedy was not created by statute, Michigan law regulates the exercise of the right to foreclose by advertisement. *See* MICH. COMP. LAWS § 600.3201-.3285. Relevant to the issues in this case, Michigan law allows foreclosure by advertisement only by "the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage." MICH. COMP. LAWS § 600.3204(1)(d).

Michigan law allows foreclosure by advertisement if all of the following circumstances exist: (1) a default in the condition of the mortgage has occurred, by which the power to sell became operative; (2) a court action or proceeding has not yet been instituted to recover the debt secured by the mortgage; (3) the mortgage containing the power of sale has been properly recorded; and (4) the party foreclosing the mortgage is one of those parties identified in the statute as having the power to foreclose. *Sallie v. Fifth Third Bank*, 824 N.W.2d 238, 240 (Mich. Ct. App. 2012) (citing MICH. COMP. LAWS § 600.3204(1)).

In the present case, plaintiff's complaint does not challenge the existence of any of the statutory prerequisites to foreclosure by advertisement, and the record before the court affirmatively demonstrates that each of the prerequisites has in fact been met. First, plaintiff himself admits that a default in the condition of the mortgage has occurred, as plaintiff stopped making payments four years ago. (Compl., ¶ 23). Second, there is no evidence that the Bank has initiated any other proceeding with regard to this debt or the mortgage obligation. Third, plaintiff's mortgage indeed contains a power of sale. The Michigan Court of Appeals has examined language identical to that which appears in paragraph 22 of plaintiff's mortgage, finding that a valid power of sale was created. *Wallace v. Chase Home Fin., LLC*, No. 299984, 2011 WL 4503314, at * 2-3 (Mich. Ct. App. Sept. 29, 2011). The mortgage instrument now before the court bears evidence on its face that it was recorded by the Kent County Register of Deeds on March 25, 2011, beginning at Liber 6758, page 635. (ID# 318). Finally, MERS executed an assignment of mortgage in favor of Bank of America on June 13, 2011. (ID# 333). This document reflects on its face that it was recorded electronically by the Kent County Register of Deeds on June 16, 2011. The foreclosure by advertisement did not commence until July 27, 2011 (ID# 351), by which time both the mortgage

and the assignment were properly recorded. In the face of this factual record, the Michigan courts would not enjoin the foreclosure by advertisement at issue in this case.

Plaintiff purports to allege three state-law claims alleging that defendants somehow "lack standing" to foreclose the mortgage by advertisement. The issue of standing is sometimes a question in cases involving foreclosure by advertisement under Michigan law. *See, e.g., Residential Funding Co., LLC v. Saurman*, 805 N.W.2d 183 (Mich. 2011). In this case, however, standing cannot possibly be an issue. The record clearly shows that foreclosure by advertisement was initiated by Bank of America as mortgagee of record. Under Michigan law, foreclosure by advertisement may be initiated by "either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage." MICH. COMP. LAWS § 600.3204(d). The mortgagee is the owner of the indebtedness and therefore has clear standing to foreclose. *See Hargrow v. Wells Fargo Bank, N.A.*, 491 F. App'x 534, 536-37 (6th Cir. 2012).

Plaintiff's other grounds for relief from the foreclosure are insubstantial. First, plaintiff seems to think that the Bank's failure to answer his pre-lawsuit accusations somehow estops the Bank from foreclosing the mortgage. Plaintiff cites no authority supporting this frivolous argument. In a similar vein, plaintiff relies on various notices and other documents that he filed with the Register of Deeds, purporting to cancel the mortgage. These unilateral attempts to cancel the promissory note and mortgage are of no legal effect. Second, plaintiff asserts that the assignment of the mortgage from MERS back to Bank of America was somehow wrongful. Michigan law clearly holds, however, that a borrower has no standing to challenge the validity of an assignment of a mortgage. *See Livonia Properties Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC*, 399 F. App'x 97, 102 (6th Cir. 2010) (citing *Bowles v. Oakman*, 225 N.W. 613, 614 (Mich.

1929)). A narrow exception exists in cases where the lack of notice of an assignment causes the borrower demonstrable prejudice, such as exposure to double liability. *See Carmack v. Bank of N.Y. Mellon*, No. 12-1953, ____ F. App'x ___, 2013 WL 4529871, at * 2-3 (6th Cir. Aug. 27, 2013). As the foreclosing party is the mortgagee itself, no double liability is possible and this exception is of no relevance.

Beyond these "defenses" to foreclosure, plaintiff makes vague allegations of fraud, including the assertion that the assignment of the mortgage was the result of "robo-signing." Despite the sensational headlines condemning "robo-signing" in the media, the concept is without legal significance, and no Michigan appellate court has ever invalidated a mortgage on grounds of "robo-signing." *See Saleh v. Aurora Loan Servs.*, No. 308611, 2013 WL 2120294, at * 3 (Mich. Ct. App. May 16, 2013) (bare reference to robo-signing without alleging facts to establish a violation of law that would invalidate a foreclosure fails to state a claim).

Finally, plaintiff's conclusory allegation of fraud establishes no grounds to interfere with the foreclosure by advertisement. A plaintiff alleging fraud in federal court must satisfy the pleading requirements of Fed. R. Civ. P. 9(b), which requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Under Sixth Circuit authority, plaintiff satisfies the requirements of Rule 9(b) by (1) pointing to a particular allegedly fraudulent statement, (2) identifying the maker of the statement, (3) pleading when and where the statement was made, and (4) explaining what made the statement fraudulent. *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 253 (6th Cir. 2012). Plaintiff fails to satisfy the requirements of the Sixth Circuit test. Nowhere in the complaint does he indicate when, where, or to whom any allegedly false statement was made. Under Sixth Circuit authority, this defect is "fatal." *Id.*

Plaintiff's state-law claims are incoherent and are supported by no authority. The record plainly shows that plaintiff is the debtor on a promissory note secured by real estate, that he ceased paying on the debt, and that the mortgagee (Bank of America) has begun foreclosure by advertisement proceedings pursuant to the power of sale contained in the mortgage. Plaintiff has not pleaded or proved any facts that would lead a court to interfere with the foreclosure.

**Recommended Disposition**

For the foregoing reasons, I recommend that the motion of defendants Bank of America, N.A., Mortgage Electronic Registration Systems, Inc., and Youda Crain for judgment on the pleadings (docket # 26), construed as a motion for summary judgment under Fed. R. Civ. P. 56, be granted and that judgment be entered in their favor and against plaintiff on all claims.

Dated: November 1, 2013          /s/ Joseph G. Scoville
                                 United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).